**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| EMETRIA WHEELER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BNSF RAILWAY COMPANY, et al., ) <br> ) <br> Defendants. ) <br> _____) | CIVIL ACTION <br> No. 09-2270-KHV |

**MEMORANDUM AND ORDER**

Emetria Wheeler brings suit against BNSF Railway Company and Mike D. Harding for employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981. This matter is before the Court on defendants' Motion To Dismiss (Doc. #13) filed August 24, 2009. For reasons stated below, the Court sustains defendants' motion in part.

**Legal Standards**

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. Id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 129 S. Ct. at 1950.

**Facts**

Plaintiff alleges the following facts which the Court accepts as true for purposes of ruling

on defendants' motion to dismiss.[1]

Plaintiff is an African American woman. She is a member of the Brotherhood Railway Carmen Division of the Transportation Communications International Union ("BRC"). Pretrial Order (Doc. #39) at 2, 11.

In 2002, BNSF employed plaintiff as a painter in its shop facility in Topeka, Kansas.[2] Id. at 11. In April of 2002, subject to a memorandum agreement between BNSF and BRC dated March 8, 2002 ("2002 Transfer Agreement"), BNSF transferred all freight car work in Topeka to its Havelock facility in Lincoln, Nebraska.[3] Id. at 2-3. After the work transfer, BNSF retained only five painters in Topeka.[4] As to remaining painters, it allowed them to choose between transferring to Havelock or accepting a furlough until work became available in Topeka.[5] Id. at 3. Plaintiff elected to transfer to Havelock. Id. At Havelock, plaintiff obtained new seniority dates as both a painter and a carman. Id. at 3, 11. Plaintiff understood that by transferring to Havelock, she gave

---

[1] On February 5, 2010, the Court entered a pretrial order which supercedes all pleadings in the case. See Doc. #39; D. Kan. Rule 16.2(c). The Court therefore looks to the pretrial order to determine plaintiff's factual allegations and legal claims.

[2] Plaintiff began working for BNSF in 1977. The record does not reflect her position at that time.

[3] At the time of the work transfer, a collective bargaining agreement ("CBA") between BRC and the former Burlington Northern governed painter and carman work at Havelock. A separate agreement between BRC and the former Santa Fe governed painter and carman work at Topeka. Pretrial Order (Doc. #39) at 4. These CBAs did not address the means by which transferred employees might return to Topeka. Id. at 4.

[4] The record does not reflect the total number of painters in Topeka.

[5] Pursuant to the 2002 Transfer Agreement, employees who transferred to Havelock received new seniority dates and no longer had seniority in Topeka. Pretrial Order (Doc. #39) at 3, 11.

up her seniority at Topeka.[6] Id. at 3.

When BNSF transferred carmen and painters to Havelock, it agreed that it would transfer them back to Topeka as its business needs allowed. Id. at 11. Mike Harding, general foreman at Topeka, was responsible for transferring them back. Id. In October of 2002, Harding began transferring carmen from Havelock to Topeka. Id. From 2002 to 2008, he transferred only male employees, none of whom were African-American. Id.

In January of 2005, Harding transferred John Rangel, a Caucasian male painter, from Havelock to Topeka. Id. In the summer of 2005, Rangel retired from BNSF. Id. Harding thereafter refused to transfer plaintiff to Topeka. Id. Instead, Harding assigned painting duties in Topeka to carmen and apprentice carmen. Id. at 11-12.

In April of 2005, BNSF and BRC executed an agreement ("2005 Transfer Agreement") which permitted employees to voluntarily transfer between locations to fill vacant positions for which employees with seniority at that location were not available for assignment or recall. Id. at 4.[7]

---

[6] In Topeka, plaintiff did not have seniority as a carman. Pretrial Order (Doc. #39) at 3. The record does not state whether she had seniority as a painter in Topeka.

[7] The agreement provided for assignments to vacant positions in the following order:

(a) Senior furloughed employees covered by the same CBA holding seniority at another location;

(b) Senior active employees covered by the same CBA holding seniority at another location;

(c) Senior furloughed employees covered by a different CBA; and

(d) Senior active employees covered by a different CBA.

(continued...)

In the summer or fall of 2006, BNSF offered Richard Barnes, a Caucasian male carman and painter, the opportunity to transfer from Havelock to its facility in Kansas City, Kansas. Id. at 12.[8] Barnes declined. BNSF did not offer plaintiff a similar transfer. Id.

In April of 2007, Harding transferred William Galloway, a Caucasian male carman, from Kansas City to Topeka.[9] Id. In Topeka, Harding improperly assigned Galloway painting duties. Id.

Plaintiff complained of gender and race discrimination to BNSF managers, including Harding. Id.[10] Defendants took adverse employment actions against plaintiff because of gender and/or race and in retaliation for her protest of discrimination. Id. These adverse employment actions included refusing to transfer her from Havelock, assigning unfavorable work duties and restricting her opportunity to work overtime. Id.

As a result of defendants' wrongful conduct, plaintiff has sustained damages of past financial loss, emotional distress, mental anguish, anger and loss of enjoyment of life. Id. Defendants acted with malice or with reckless indifference to plaintiff's federally protected rights and are therefore liable for punitive damages. Id.

---

[7](...continued)
Id.

[8] Plaintiff does not allege who offered the transfer to Barnes.

[9] Plaintiff implies that Galloway had previously transferred from Topeka to Kansas City, but she does not allege circumstances relating thereto. See Pretrial Order (Doc. #39) at 12 (BNSF transferred Galloway "back" to Topeka and upon his "return" assigned painting duties).

[10] In 2007 and 2008, plaintiff filed formal charges of discrimination with administrative agencies. Pretrial Order (Doc. #39) at 12; Defendants' Memorandum (Doc. #14) at 3-5.

## Analysis

Plaintiff asserts the following claims: (1) race discrimination under Section 1981 and (2) race discrimination, sex discrimination and retaliation under Title VII. See Pretrial Order (Doc. #39) at 16-17.[11] As to the Title VII claims, defendants seek to dismiss because (1) Harding is not a proper defendant and (2) except from March 4, 2007 to June 30, 2008, the claims are barred by failure to exhaust administrative remedies. As to these arguments, plaintiff agrees. See Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss ("Plaintiff's Opposition) (Doc. #18) filed September 23, 2009 at 2. Defendants also assert that (1) a two-year limitations period applies to plaintiff's Section 1981 claims and (2) the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et al., precludes plaintiff's claims. As to these arguments, plaintiff disagrees.[12]

### I.  Whether A Two-Year Limitations Period Applies To Plaintiff's Section 1981 Claim

Plaintiff alleges that defendants discriminated on the basis of race in violation of 42 U.S.C. § 1981.[13] Defendants assert that a two-year statute of limitations applies to this claim. Plaintiff

---

[11] In the pretrial order, under her first theory for relief, plaintiff alleges race and/or gender discrimination in violation of Title VII and/or Section 1981. See Pretrial Order (Doc. #39) at 16. Plaintiff does not distinguish which claims she brings under each statute. Section 1981 outlaws discrimination based only on race. See Daemi v. Church's Fried Chicken, Inc., 931 F.2d 1379, 1387 n.7 (10th Cir. 1991) (citing Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987). The Court construes plaintiff's claims accordingly.

[12] Defendants also assert that plaintiff's claims for racial and sexual harassment under Title VII are barred by failure to exhaust administrative remedies. See Memorandum In Support Of Motion To Dismiss ("Defendants' Memorandum") (Doc. #14) filed August 24, 2009 at 14-16. Although plaintiff included harassment claims in the complaint, see Complaint (Doc. #1) filed May 21, 2009 at 4-5, she did not include them in the pretrial order and has therefore waived them. See Pretrial Order (Doc. #39) at 16-17; Smith v. Bruce, 568 F. Supp.2d 1277, 1279 (D. Kan. 2008). Accordingly, the Court does not address this argument.

[13] In response to defendants' motion to dismiss, plaintiff states that under Section 1981,
(continued...)

disagrees, asserting that a four-year limitations period applies.

As originally enacted, Section 1981 created a statutory right "to make and enforce contracts" – including employment contracts – but did not protect against conduct which occurred after formation of a contract. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 372-73 (2004) (citing Patterson v. McLean Credit Union, 49 U.S. 164 (1989)).[14] The statute did not contain a limitations period and courts borrowed from analogous state statutes of limitations. See Goodman v. Lukens Steel Co., 482 U.S. 656, 660 (1987). In Kansas, courts applied the two-year limitation for personal injury claims. See Baker v. Bd. of Regents of State of Kan., 991 F.2d 628, 630-31 (10th Cir. 1993); K.S.A. § 60-513(a)(4).

In 1991, Congress amended Section 1981 to include the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).[15] Under the amended statute, an employee may sue for discriminatory acts which

---

[13](...continued)
she claims disparate treatment, retaliation and hostile work environment. See Plaintiff's Opposition (Doc. #18) at 3. In the pretrial order, however, plaintiff asserts only disparate impact under Section 1981. See Pretrial Order (Doc. #39) at 16-17. Specifically, plaintiff claims that because of race, defendants refused to transfer her, assigned unfavorable work duties and restricted her opportunity to work overtime. See id. at 12. By not including Section 1981 claims for harassment and retaliation in the pretrial order, plaintiff has waived those claims. See Smith, 568 F. Supp.2d at 1279.

[14] As originally enacted, Section 1981 provided in relevant part that "all persons [within the jurisdiction of the United States] shall have the same right, in every State and Territory . . . to make and enforce contracts . . . as is enjoyed by white citizens." Jones, 541 U.S. at 372 (quoting 14 Stat. 27).

[15] As amended, Section 1981 provides as follows:

(a) Statement of equal rights

(continued...)

occur after formation of an employment contract. See, e.g., Jones, 541 U.S. at 383 (hostile work environment, wrongful termination and failure to transfer claims). For claims which arise under the 1991 amendment to Section 1981 – i.e. claims based on acts which occur after formation of an employment contract – a four-year statute of limitations applies. See 28 U.S.C. § 1658(a); Jones, 541 U.S. at 1845; Harris v. Allstate Ins. Co., 300 F.3d 1183, 1192 (10th Cir. 2002).[16] For claims which could have been brought under the pre-1991 version of Section 1981, however, the two-year limitation applies. See Cross v. The Home Depot, 390 F.3d 1283, 1289 (10th Cir. 2004).

---

[15](...continued)
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.

[16] Section 1658(a) states as follows:

(a) Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.

28 U.S.C. § 1658.

Defendants assert that plaintiff's Section 1981 claim is based on formation of a new contractual relationship and therefore subject to the two-year limitations period. Specifically, defendants assert that the 2005 Transfer Agreement created a new and distinct relationship between plaintiff and BNSF and that plaintiff's claims are therefore based on contract formation and could have been brought under the pre-1991 version of Section 1981.[17] See Defendants' Memorandum (Doc. #14) at 15-17. Plaintiff counters that her claim that defendants discriminated by refusing to transfer her to Topeka is based on conduct which occurred after the 2005 Transfer Agreement and is therefore "post-formation" conduct.[18] See Plaintiff's Opposition (Doc. #18) at 3. Both arguments miss the boat. In determining which statute of limitations applies, the Court looks to whether the alleged discriminatory conduct – i.e. the failure to transfer plaintiff from Havelock to Topeka – relates to contract formation. In other words, the Court must determine whether "a new and distinct relation" between BNSF and plaintiff would have resulted if BNSF had transferred her back to Topeka. See Cross, 390 F.3d at 1289. The alleged conduct here – failure to transfer – is similar to failure to promote. In Cross, the Tenth Circuit found that under the pre-1991 version of 1981, a failure-to-promote claim was actionable only if it rose to the "level of an opportunity for a new and distinct relation between the employee and the employer." 390 F.3d at 1289 (quotations and

---

[17] As noted, prior to 2005, BNSF and BRC did not have an agreement which addressed the means by which transferred employees might return to Topeka. In April of 2005, they executed the 2005 Transfer Agreement which permitted a voluntary transfer between locations to fill vacant positions for which employees with seniority at that location were not available for assignment or recall.

[18] Neither party addresses plaintiff's claims that defendants assigned unfavorable work duties and restricted her opportunity to work overtime. See Pretrial Order (Doc. #39) at 12. It appears that these actions do not relate to contract formation and the four-year limitations period would apply.

citations omitted). The Tenth Circuit found that if the promotion would have created a "new and distinct relation," the two-year limitation applied. See id. Conversely, if the promotion would not have created a new relationship, the four-year limitation applied. See id. Here, the parties do not address whether transferring plaintiff to Topeka would have resulted in a new and distinct relationship between BNSF and plaintiff. On this record, defendants have not shown that a two-year limitations period applies to plaintiff's Section 1981 claims.

Defendants assert that even if a four-year limitation applies, plaintiff may not assert Section 1981 claims based on conduct which occurred before May 21, 2005, i.e. four years before she filed the complaint in this case. Plaintiff does not respond to this argument. Although the Court does not decide which statute of limitations applies, it agrees that plaintiff cannot assert Section 1981 claims based on conduct which occurred before May 21, 2005. The Court will therefore dismiss any Section 1981 claims based on conduct before that date.

**I.     Whether The Railway Act Precludes Plaintiff's Claims**

As noted, plaintiff asserts under Title VII and Section 1981 that defendants discriminated and/or retaliated by not transferring her, assigning unfavorable work duties and restricting her opportunity to work overtime. Defendants assert that the RLA precludes plaintiff's claims because they are "inextricably intertwined" with matters governed by a CBA.[19]

In Hysten v. Burlington N. Santa Fe R.R. Co., 372 F. Supp.2d 1246 (D. Kan. 2005), this

---

[19]     In Andrews v. Louisville & Nashville R.R. Co., 406 U.S. 320 (1972), the United States Supreme Court noted that the RLA created the National Railroad Adjustment Board to serve as the exclusive mechanism for resolving "minor" disputes, i.e. disputes which are grounded in CBAs between railroads and their employees. See Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 256 (1994); Fry v. Airline Pilots Ass'n Int'l, 88 F.3d 831, 835 (10th Cir. 1996). The RLA will preempt an employee's claim if the CBA is the only source of the employee's claim. See Hawaiian Airlines, Inc., 512 U.S. at 257-58.

Court rejected a similar argument. In Hysten, plaintiff claimed that the railroad terminated his employment in retaliation for filing a claim under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 et seq. Defendant argued that the RLA preempted the claim because it required an interpretation of the CBA which defined the railroad's duties to its employees. See Hysten, 372 F. Supp.2d at 1251. This Court disagreed. It found that plaintiff did not claim that defendant violated the terms of the CBA, but that it terminated his employment because he pursued rights under FELA. See id. at 1253. The Court found that to resolve the retaliation claim, the trier of fact would have to inquire into the motive behind the termination. With regard to whether the claim involved construction of the CBA, the Court stated as follows:

> This case implicates the CBA only to the extent that defendant may have been entitled to terminate plaintiff's employment under the CBA; it does not answer the question whether the employer's motivation was the exercise of rights under the CBA or retaliation.

Id. The Court concluded that under those circumstances, RLA preemption did not apply. See id. (citing Hawaiian Airlines, supra, and Garley v. Sandia Corp., 236 F.3d 1200 (10th Cir. 2001)).

The same analysis applies here. Plaintiff claims that defendants took adverse employment actions because of race and gender and in retaliation for complaints of discrimination. She does not allege that defendants violated the CBA. Even if the CBA allowed defendants to take such actions, the question remains whether defendants acted with improper motive under Title VII and Section 1981. Under these circumstances, RLA preemption does not apply. See Hysten, 372 F. Supp.2d at 1253. The Court will not dismiss plaintiff's claims on this ground.

**IT IS THEREFORE ORDERED** that the defendants' Motion To Dismiss (Doc. #13) filed August 24, 2009 be and hereby is **SUSTAINED in part.** The Court dismisses the following claims: (1) plaintiff's Title VII claims against Mike D. Harding; (2) any Title VII claims which are based

on conduct which occurred before March 4, 2007 and after June 30, 2008; and (3) any Section 1981 claims which are based on conduct which occurred before May 21, 2005. All other claims remain in the case.

Dated this 2nd day of March, 2010 at Kansas City, Kansas.

<pre>
                                        s/Kathryn H. Vratil
                                        Kathryn H. Vratil
                                        United States District Judge
</pre>