# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

EMETRIA WHEELER,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　**Plaintiff,**　　　　　)　　　　　**CIVIL ACTION**
v.　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　　　　　**No. 09-2270-KHV**
BNSF RAILWAY COMPANY and MIKE D.　　)
HARDING,　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　**Defendants.**　　　　)
_____)

## MEMORANDUM AND ORDER

Emetria Wheeler brought suit against BNSF Railway and Michael D. Harding for employment

discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII")

and 42 U.S.C. § 1981.  On March 2, 2010, the Court issued a memorandum and order which

dismissed (1) plaintiff's Title VII claims against Harding; (2) all other Title VII claims except those

based on conduct between March 4, 2007 and June 30, 2008; and (3) any Section 1981 claims based

on conduct before May 21, 2005.[1]  See Memorandum and Order (Doc. #45).  This matter is before

the Court on defendants' Motion For Summary Judgment (Doc. #42) filed February 17, 2010,

Plaintiff's Motion For Leave To File A Surreply Memorandum In Opposition To Defendant's [SIC]

Motion For Summary Judgment (Doc. #55) filed April 19, 2010, defendants' Response To Motion

For Leave To File Surreply (Doc. #56) filed April 29, 2010 and Plaintiff's Reply In Support Of

Motion For Leave To File A Surreply Memorandum In Opposition To Defendant's [SIC] Motion For

---

[1]　　Plaintiff waived her hostile work environment claims (Count II) by not including them in the pretrial order.  See Doc. #45 at 6.

Summary Judgment (Doc. #57) filed May 10, 2010.[2]  For reasons stated below, the Court sustains defendants' motion.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P., 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Anderson, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters

---

[2]    Plaintiff has filed a surreply which alleges that defendants' reply raises new arguments which necessitate a response.  Under D. Kan. Rule 7.1(b), parties are permitted to file a dispositive motion, a response and a reply.  Surreplies are typically not allowed.  See Stevens v. Deluxe Fin. Servs., Inc., 199 F. Supp.2d 1128, 1130 (D. Kan. 2002); Metzger v. City of Leawood, 144 F. Supp.2d 1225, 1266 (D. Kan. 2001).  On the other hand, Rule 56(c), Fed. R. Civ. P., requires that the nonmoving party receive notice and a reasonable opportunity to respond to movant's summary judgment materials.  Thus, when a reply advances new reasons or evidence in support of a motion for summary judgment, the nonmoving party should have an opportunity to respond.  If the district court grants summary judgment for movant without relying on new materials and arguments in the reply brief, however, it may preclude a surreply.  See Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1164 (10th Cir. 1998) (court may either permit surreply or refrain from relying on new material in reply brief).  In this case the Court will allow plaintiff's surreply, defendants' response to plaintiff's surreply and plaintiff's reply to defendants' response, and will consider the arguments presented therein.

for which it carries the burden of proof. <u>Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.</u>, 912 F.2d 1238, 1241 (10th Cir. 1990); <u>see also</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986); <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991). The nonmoving party may not rest on its pleadings but must set forth specific facts. <u>Applied Genetics</u>, 912 F.2d at 1241.

The Court must view the record in the light most favorable to the party opposing the motion for summary judgment. <u>Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.</u>, 938 F.2d 1105, 1110 (10th Cir. 1991). Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative. <u>Anderson</u>, 477 U.S. at 250-51. In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial. <u>Conaway v. Smith</u>, 853 F.2d 789, 794 (10th Cir. 1988). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson</u>, 477 U.S. at 251-52.

## **Factual Background**

The following facts are either uncontroverted or, where controverted, construed in the light most favorable to plaintiff:

Plaintiff is an African American woman. She is a member of the Brotherhood Railway Carmen Division of the Transportation Communications International Union ("BRC"). <u>Pretrial Order</u> (Doc. #39) at 2, 11. BNSF hired plaintiff in 1977. <u>Id.</u>

In 1988, an agreement between the BRC and BNSF's predecessor, the Santa Fe Railway, closed the Freight Painter Roster in Topeka and provided that no additional employees would

thereafter establish seniority on that list.  See id. at 3.  At that time, plaintiff had seniority on the

Freight Painter Roster.  See defendants' Memorandum In Support Of Motion For Summary Judgment

(Doc. #43) at 25.

In 2002, BNSF employed plaintiff as a painter at its facility in Topeka, Kansas.[3]  In April of

2002, pursuant to a memorandum agreement between BRC and BNSF dated March 8, 2002 ("2002

Transfer Agreement"), BNSF transferred all freight car work in Topeka to its Havelock facility in

Lincoln, Nebraska.[4]  Id. at 2-3.  After the transfer, BNSF retained only five painters in Topeka.  It

allowed the remaining painters to transfer to Havelock or accept a furlough until work became

available in Topeka.[5]  Id. at 3.  Plaintiff elected to transfer.  Id.  Plaintiff understood that the transfer

was permanent and bought a house in Lincoln.  Id.  Plaintiff understood that by transferring to

Havelock, she gave up her seniority in Topeka.  Id.

When BNSF transferred carmen and painters to Havelock, it agreed that it would transfer

them back to Topeka as business needs allowed.  Id. at 11.  In October of 2002,  Mike Harding,

general foreman at Topeka, began transferring carmen from Havelock to Topeka.  Id.  From 2002 to

---

[3]        Under Rule 98 of the CBA between the BRC and the former Santa Fe Railway,
carman's work includes "painting, varnishing, surfacing, decorating, lettering, cutting the stencils and
removing paint and all other work generally recognized as painters work under the supervision of the
locomotive and car departments."  See Ex. M attached to defendants' Memorandum In Support Of
Motion For Summary Judgment (Doc. #43) filed February 17, 2010.

[4]        At the time of the work transfer, a collective bargaining agreement ("CBA") between
BRC and BNSF's predecessor, the Burlington Northern Railway, governed painter and carman work
at Havelock.   A separate agreement between BRC and BNSF's other predecessor, the Santa Fe
Railway, governed painter and carman work at Topeka.  Pretrial Order (Doc. #39) at 4. These CBAs
did not address the means by which transferred employees might return to Topeka.  Id. at 4.

[5]        Pursuant to the 2002 Transfer Agreement, employees who transferred to Havelock
received new seniority dates and no longer had seniority in Topeka.  Pretrial Order (Doc. #39) at 3,
11.

2008, he transferred only male employees, none of whom were African-American. Id.

A.    Failure To Transfer Plaintiff To Topeka After Retirement Of John Rangel in 2005

In January of 2005, BNSF posted a position in Topeka for a "Carman Passenger Painter" See Seniority District 216 – Topeka, KS (Doc. #43-18) at 33.  BNSF awarded the position to John Rangel, the most senior person on the Passenger Painter roster in Havelock.  Doc. #43 at 9.  Plaintiff did not hold seniority on that roster and had not filled out a transfer request at that time.  Id.

After he transferred to Topeka, in the summer of 2005, Rangel retired.  Id.  Shortly thereafter, plaintiff contacted Harding to discuss filling Rangel's position.  Declaration of Emetria Wheeler, attached as Ex. 1 to [Second] Appendix To Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment (Doc. #51) at ¶ 3; Wheeler Deposition, attached as Ex. 1 to [First] Appendix To Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment (Doc. #50) at 14.  Harding told plaintiff that he was not going to fill the position because of lack of work, and because he might get someone who could not handle the job.  Id.  Harding also said that he would bring a painter back when a locomotive painter retired, or when painting became available in the locomotive department.  Id.  Harding eventually decided to fill Rangel's former position with a carman rather than a painter, see Harding Deposition, attached as Ex. 2 to [First] Appendix To Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment (Doc. #50) at 10, and he assigned painting duties in Topeka to carmen and apprentice carmen.  Id. at 11-12.

B.    Failure To Transfer Plaintiff To Kansas City In 2006

In April of 2005, BNSF and BRC executed an agreement ("2005 Transfer Agreement") which permitted employees to voluntarily transfer between locations to fill vacant positions for which

employees with seniority at that location were not available for assignment or recall.[6] Id. at 4.  On June 10, 2005, plaintiff submitted a "Request to Transfer Between Separate Agreements," indicating a desire to transfer to Topeka.  See Carmen Request To Transfer Between Separate Agreements attached as Ex. H (Doc. #43-9).  Defendants did not grant plaintiff's transfer request at that time.

On June 21, 2005, plaintiff and Rick Barnes submitted requests to transfer from Havelock to Kansas City or Topeka as painters.  See Deposition of Emetria Wheeler, attached as Exs. A-N to defendants' Memorandum In Support Of Motion For Summary Judgment (Doc. #43) at 163, 527; see also Barnes Deposition, attached as Ex. 3 to plaintiff's [First] Appendix To Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment (Doc. #50) filed March 18, 2010 at 2.  In the summer or fall of 2006, BNSF offered Barnes a transfer as a carman.  Id.  Barnes declined

---

[6]        The agreement provided for assignments to vacant positions in the following order:

(a) Senior furloughed employees covered by the same CBA holding seniority at another location;

(b) Senior active employees covered by the same CBA holding seniority at another location;

(c) Senior furloughed employees covered by a different CBA; and

(d) Senior active employees covered by a different CBA.

Therefore, under the agreement, a vacant position at a former Sante Fe Railway location would be assigned, in order, to (1) a furloughed employee at another former Sante Fe location, (2) an active employee at another former Sante Fe location, (3) a furloughed employee from a former Burlington Northern location, and (4) an active employee at a former Burlington Northern location. See Pretrial Order (Doc. #39) at 7.

Before the 2005 Transfer Agreement, employees at Havelock were treated like applicants "off the street."  They had to apply and have their qualifications considered and the best qualified would be selected.  Id.; see also Deposition of Michael Harding, attached as Exs. O and P to defendants' Memorandum In Support Of Motion For Summary Judgment (Doc. #43) at 54.

and BNSF did not offer plaintiff a similar transfer. <u>Id.</u> at 2, 4.

In November of 2006, BNSF offered plaintiff a position as a laborer in Topeka. <u>Wheeler Deposition</u> (Doc. #50-1) at 4. Plaintiff declined because BNSF did not assure her that if she could not handle the job, she could transfer back to Havelock within 30 days. <u>Id.</u>

C.     <u>Failure To Transfer Plaintiff To Topeka In April of 2007</u>

In March of 2007, Jesse Avila, an employee on the Painter Roster in Topeka, died. <u>Wheeler Deposition</u> (Doc. #50-1) at 18. After Avila died, the general foreman over the locomotive shop – in consultation with the superintendent – decided not to fill his position. <u>Harding Deposition</u> (Doc. #50-2) at 15-16. BNSF later gave Harding permission to fill the position by calling a carman back to work in the business car shop. <u>Id.</u>

On April 5, 2007, plaintiff saw a job posting for "either a carman or a painter position" in Topeka. <u>See</u> <u>Declaration of E. Wheeler</u> at ¶ 4; <u>Wheeler Deposition</u> (Doc. #50-1) at 19-20. Harding was the hiring manager for this position, which included painting duties. <u>Id.</u> By April 9, 2007, the job posting was no longer viewable online but BNSF had posted a new position, "Railcar Repair-Journeyman." <u>See</u> <u>Declaration of E. Wheeler</u> at ¶ 5; <u>Wheeler Deposition</u> at 19-20. This position did not expressly include painting. <u>Id.</u>

At the time of the 2002 Transfer Agreement, William "Bill" Galloway was a journeyman carman on the Topeka roster. He had elected to transfer to Havelock, <u>Galloway Deposition</u>, attached as Ex. 4 to <u>[First] Appendix To Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment</u> (Doc. #50) at 8-10, and on May 9, 2005, he transferred from Havelock to Kansas City. <u>Id.</u> at 2. On April 9, 2007, Galloway contacted Harding to inquire about a job posting in Topeka as either a carman or painter. <u>Id.</u> Galloway had begun completing an online application for

-7-

the position.  Id. at 4.  Harding told Galloway that if he was serious about the position, he should request a transfer rather than apply online.  Id. at 3.  Harding further advised Galloway that if he submitted the paperwork for a transfer, he would get consideration before employees in Havelock. Id. at 4.  Galloway was not aware that because Kansas City was a former Santa Fe Railway shop, he would have transfer priority over employees in Havelock.  Id. at 5-6.  Galloway filled out the transfer paperwork and faxed it to Harding.  Id.  Shortly thereafter, Galloway received the transfer.  Id. at 8. On April 16, 2007, Galloway began work in Topeka.  He performed cab carpenter duties for three days, id., but on April 19, 2007, an unnamed supervisor assigned Galloway to locomotive painting duties.  Id. at 8-9.

> D.    Failure To Transfer Plaintiff To Topeka After June Of 2007

One month before Avila's death, Steve Gomez and a co-worker approached Rick Galvan, superintendent of the Topeka facility, about bringing plaintiff and Barnes back to Topeka.  See Gomez Deposition, attached as Ex. 5 to [First] Appendix To Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment (Doc. #50) at 5.  In June of 2007, Galvan told Gomez, "it's a done deal, they are coming."[7]  Id.  Nonetheless, defendants did not transfer plaintiff or Barnes at that time.  Id.

---

[7]    Defendants object that Galvan's statement is inadmissible hearsay. Hearsay evidence is inadmissible when considering a summary judgment motion.  See Mohamed v. Tattum, 380 F.Supp.2d 1214, 1221 (D. Kan. 2005).  A statement is not hearsay if the statement is offered against a party and is a statement by the party's agent concerning a matter within the scope of the agency or employment, made during the existence of the relationship.  See Rule 801(d)(2), Fed. R. Evid.; see also Thomas v. Int'l Bus. Machs., 48 F.3d 478, 486 (10th Cir. 1995).  Because we examine the record in the light most favorable to plaintiff, the Court assumes for purposes of summary judgment that Galvan's statement is offered against defendants and that he was an agent of defendants speaking about a matter within the scope of his agency when he made the statement. The statement is therefore not hearsay and is properly considered.

On June 15, 2007, plaintiff filed a charge of race and gender discrimination with the Topeka Human Relations Commission.[8] See Topeka HRC Letter of July 20, 2007 attached as Ex. BB to Plaintiff's Reply In Support Of Motion For Leave To File A Surreply Memorandum In Opposition To Defendant's Motion For Summary Judgment (Doc. #57) filed May 10, 2010. On the same day, the Commission sent a letter to BNSF, enclosing a copy of plaintiff's charge and a request for records from BNSF. On July 20, 2007, Rebecca Stanosheck, BNSF Manager of Human Relations, sent a letter to the Commission. See id. Stanoshek acknowledged receipt of the Commission's letter, denied all of plaintiff's allegations and requested that the Commission dismiss the charge and issue a finding of no probable cause. Id.

On December 29, 2007, plaintiff filed a charge of race and gender discrimination against BNSF with the Kansas Human Relations Commission. See Charge of Discrimination attached as Ex. J to Doc. #43. Plaintiff's charge alleged that BNSF violated Title VII by denying her seniority rights and refusing to transfer her to the job location of her choice because she is an African-American woman. Id.

On June 30, 2008, plaintiff filed a third charge of race and gender discrimination, with the Equal Employment Opportunity Commission. See Ex. K to Doc. #43. In her complaint, plaintiff stated that BNSF had discriminated and retaliated against her in violation of Title VII and Section 48-1104 of the Nebraska Fair Employment Practice Act, see Neb. Rev. Stat. § 48-1104. Specifically, plaintiff alleged that BNSF's failure to transfer her back to Topeka was discriminatory.

Meanwhile, pursuant to an agreement between the BRC and BNSF dated May 22, 2008, two

---

[8]     The record only contains the Topeka HRC's letter of July 15, 2007 to BNSF which documents plaintiff's complaint and BNSF's response. The original charge is not attached.

Freight Painter Carman positions were posted in Topeka. The agreement provided that the successful applicants would be added to the "Closed Freight Painter Roster" in Topeka. See Ex. P attached to Doc. #43.

On July 10, 2008, ten days after plaintiff filed her EEOC charge, BNSF sent plaintiff a letter about a painter position in Topeka. See Letter of July 10, 2008 attached as Ex. 10 to plaintiff's Appendix To Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment (Doc. #50). The letter stated in relevant part:

> I have been attempting to contact you by telephone in regards to the Carman Painter position in Topeka, KS that was advertised on our website several weeks ago. I am going through the transfer request list for Carmen Painters to Topeka and you are on the top of the seniority roster.

Id. On July 11, 2008, the superintendent in Topeka called plaintiff and told her that a painter position was available in Topeka. Wheeler Deposition at 251-53. The title of the position was "Car Loco Painter" (Carman Locomotive Painter) and the duties were "Paint Locomotives/Parts."[9] Id. at 505-06. During their conversation, Galvan did not tell plaintiff about the agreement on May 22, 2008 to create two new painter positions in Topeka. Id. at 504-505.

On August 24, 2008, plaintiff returned to work in Topeka in the locomotive painter position. Wheeler Deposition at 505. Plaintiff's rate of pay was equivalent to her rate of pay in at Havelock. Id. Plaintiff now has a seniority date of August 18, 2008 on the Freight Painter roster in Topeka. See Ex. F attached to Doc. #43.

E.    Disparate Treatment Of Plaintiff Relative To Barnes

Since returning to Topeka, unspecified BNSF managers have treated plaintiff less favorably

_____

[9]    BNSF does not differentiate between freight car painters and locomotive painters. See Harding Deposition at 150-51.

-10-

than Barnes. <u>Wheeler Deposition</u> at 316-19. Specifically, in contrast to Barnes, a male Caucasian, plaintiff did not get keys to the facility or to her personal locker, and she did not have a vehicle for her use. <u>Id.</u> Plaintiff did not receive work assignments directly from her supervisor. <u>Id.</u> Instead, Barnes relayed work assignments to her from BNSF managers. <u>Id.</u> at 342-47. Also, BNSF has given plaintiff work assignments with unusually short time requirements. <u>Id.</u> No one at BNSF has disciplined plaintiff or counseled her with respect to any work performance since she returned to Topeka. <u>Id.</u> at 335, 342-44.

## **Analysis**

Plaintiff alleges discrimination in violation of Title VII and 42 U.S.C. § 1981 (Count I) and retaliation in violation of Title VII and 42 U.S.C. § 1981 (Count III). As to Count I, plaintiff alleges that because of race and gender, defendants treated her differently than similarly situated non-minority employees. As to Count III, plaintiff alleges that because of complaints of discrimination and harassment, defendants refused to transfer her to Topeka, assigned her unfavorable work duties and restricted her opportunity to work overtime.[10] Defendants argue that they are entitled to summary judgment on all claims.[11]

---

[10] After alleging in her complaint that defendants retaliated against her by restricting her opportunity to work overtime upon returning to Topeka in 2008, plaintiff apparently abandons this argument in response to defendants' motion for summary judgment. Therefore, the Court does not address this issue.

[11] The Court has already addressed defendants' arguments that (1) plaintiff's claims are time barred and she has not exhausted administrative remedies; (2) Harding is not a proper defendant for any claim under Title VII and (3) the Railway Labor Act precludes plaintiff's claims. As noted, defendants filed their motion for summary judgment on February 17, 2010. Two weeks later, on March 2, 2010, the Court entered a memorandum and order which essentially rendered these arguments moot. As stated in the memorandum and order of March 2, 2010, plaintiff's Title VII claims, except those based on conduct between March 4, 2007 and June 30, 2008 have been
(continued...)

The Court has previously dismissed plaintiff's Title VII claims, except those based on conduct between March 4, 2007 and June 30, 2008 and plaintiff's Section 1981 claims based on conduct which occurred before May 21, 2005. To that extent, portions of defendants' summary judgment arguments are moot, and the Court will not address them further.

## I.      Discrimination (Count I)

Plaintiff claims that defendants violated Title VII and 42 U.S.C. § 1981 when, because of race and gender, defendants took five adverse actions against her: (1) failing to transfer her to Topeka after Rangel retired on July 1, 2005; (2) failing to transfer her to Kansas City in the fall of 2006; (3) failing to transfer her to Topeka in April of 2007; (4) failing to transfer her to Topeka after June of 2007 and (5) treating her less favorably than Barnes when they returned to Topeka in 2008.[12] Defendants seek

---

[11](...continued)
dismissed. Similarly, plaintiff's Section 1981 claims based on conduct which occurred before May 21, 2005 have been dismissed. See Memorandum and Order (Doc. #45). Furthermore, plaintiff's Title VII claims against Harding have been dismissed. Finally, the Court has held that RLA preemption does not apply. See Hysten v. Burlington N. Santa Fe R.R. Co., 372 F. Supp.2d 1246, 1253 (D. Kan. 2005) (RLA preclusion not appropriate where CBA did not determine whether employer's motivation for alleged discrimination retaliation or exercise of rights under CBA or retaliation); Adams v. Am. Airlines, Inc., No. 98-5118, 2000 U.S. App. LEXIS 284, at *22-24 (10th Cir. Jan. 10, 2000).

[12]      42 U.S.C. § 2000e-2(k) of Title VII states in relevant part as follows: "[A]n unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."
In a case under Title VII and § 1981 arising out of the same facts, the commonality of factual issues between the § 1981 and Title VII claims is nearly all-encompassing: the elements of each cause of action are construed identically and a jury verdict on the issue of liability under § 1981 is normally conclusive on the issue of liability in a parallel action under Title VII. Therefore, Title VII and § 1981 claims are analyzed the same way. Thomas v. Denny's, Inc., 111 F.3d 1506, 1513 (10th Cir. 1997).
As stated above, plaintiff's Title VII claims relating to defendants' refusal to transfer her to Topeka in 2005 and 2006 are moot. All of plaintiff's remaining Title VII claims are based on
(continued...)

summary judgment, arguing – among other things – that plaintiff was not subject to adverse employment action.

Title VII prohibits intentional employment discrimination on the basis of race, which is known as "disparate treatment." See Ricci v. DeStefano, 129 S. Ct. 2658, 2672 (2009). Under Title VII, it is also an unlawful employment practice for an employer to discriminate against any individual because of sex, with respect to compensation, terms, conditions or privileges of employment. 42 U.S.C. § 2000e-2(a)(1). The Court applies a disparate treatment analysis to claims alleging that an employer treats some people less favorably than others because of a protected trait such as race or sex. See Fye v. Okla. Corp. Comm'n, 516 F.3d 1217, 1224-25 (10th Cir. 2008). To prevail on her disparate treatment claim under Title VII, plaintiff must show that the alleged discrimination was intentional. Id. The precise articulation of a prima facie case depends on the context of the claim and the nature of the adverse employment action alleged. Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005). For both claims, plaintiff may make a prima facie case by showing that (1) she belongs to a protected class, (2) she suffered adverse employment action and (3) the adverse employment action occurred under circumstances which give rise to an inference of discrimination. See Freeman v. Spencer Gifts, Inc., 333 F. Supp.2d 1114, 1129 1 (D. Kan. 2004). The Court addresses in turn each of plaintiff's five claims of discrimination.

A.    Failure To Transfer Plaintiff To Topeka After Retirement Of John Rangel In 2005

Plaintiff alleges that BNSF treated her less favorably than unnamed BNSF carmen employees when it failed to transfer her to Topeka as a passenger painter car after Rangel retired on July 1,

---

[12](...continued)
defendants' refusal to transfer her in 2007. All of plaintiff's Section 1981 claims remain, as they are based on defendants' failure to transfer her on four occasions after May 21, 2005.

2005.[13]  See Doc. #49 at 17.  Defendant argues that it is entitled to summary judgment because as a matter of law, it did not subject plaintiff to adverse employment action.

An adverse employment action which gives rise to a charge of discrimination must be an ultimate employment decision such as hiring, compensating, promoting, granting leave or firing.  See Gunnell v. Utah Valley State College, 152 F.3d 1253, 1264 (10th Cir. 1998).  Where a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the employee's belief that the transfer is either positive or negative does not of itself render the denial or receipt of the transfer an adverse employment action.  See Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 (10th Cir.1998); see also Vann v. Southwestern Bell Tel. Co., 179 Fed. Appx. 491, 497 (10th Cir. 2006) (transfer which increased plaintiff's commute by 177 miles not adverse employment action where transfer resulted in no material change in pay, benefits or job responsibilities); Helmerichs v. Potter, 533 F. Supp.2d 1137 (D. Kan. 2008) (plaintiff's cited reasons why requested transfer was more beneficial, i.e. travel expense and time and stress of travel, not enough to withstand summary judgment as to adverse employment action).

In this case, the position which Rangel vacated, and to which plaintiff sought transfer, was that of passenger painter.  Plaintiff eventually transferred to Topeka as a painter in August of 2008.  Plaintiff cites no evidence, however, that Rangel's former position in Topeka was more objectively desirable than her position in Havelock in 2005.  When plaintiff transferred from Havelock to Topeka as a painter in 2008 (ostensibly the position to which Rangel transferred in 2005) her rate of pay was equivalent to her rate of pay at Havelock; (2) her position was the same as her position at Havelock

---

[13]     After Rangel retired, BNSF used carmen to perform Rangel's painting duties.  The record does not indicate who specifically took over Rangel's painting duties.

-14-

and (3) her status was the same as her status at Havelock. See Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment (Doc. #49) filed March 17, 2010 at 23. The record contains no evidence of an objective difference between plaintiff's position in Havelock and Rangel's position which she sought in Topeka in 2005. See Semsroth v. City of Wichita, 555 F.3d 1182, 1184 (10th Cir. 2009).[14] Therefore, as a matter of law, BNSF's refusal to transfer plaintiff to Topeka following Rangel's retirement in 2005 did not constitute adverse employment action and defendants are entitled to summary judgment on this disparate treatment claim.

### B. Failure To Transfer Plaintiff To Kansas City In 2006

Plaintiff alleges that BNSF treated her less favorably than Barnes, another painter in Havelock, when it offered to transfer him to Kansas City as a carman while she was seeking a transfer to Kansas City as a painter or carman. See Doc. #49 at 17. As noted, defendant seeks summary judgment on the grounds that it did not subject plaintiff to adverse employment action.

As noted above, to establish a prima facie case under Title VII or Section 1981, plaintiff must establish that the challenged conduct constituted adverse employment action. Plaintiff cites no specific reason why the carman position in Kansas City was objectively more desirable than her painter position in Havelock. The Court therefore holds that as a matter of law, BNSF's refusal to offer plaintiff a transfer to Kansas City in 2006 did not constitute an adverse employment action.

### C. Failure To Transfer Plaintiff To Topeka In April Of 2007

---

[14]     In her briefs, plaintiff cites no reason – even a subjective one – why Kansas City or Topeka was preferable to Havelock. The only record evidence comes from plaintiff's deposition, which she does not cite but which is part of the record. Specifically, plaintiff stated, "[Kansas City] was closer to home . . . any point closer to home than Lincoln, Nebraska I would have transferred." See Wheeler Deposition (Doc. #50-1) at 17. Plaintiff also stated that "Havelock to my personal opinion to me it was like a step back in time at least 20 years . . . it was like a step back in time." See Wheeler Deposition (Doc. #43-15) at 3.

Plaintiff alleges that BNSF treated her less favorably than Galloway when it transferred him to Topeka as a carman while she was seeking transfer to Topeka as a painter. See Doc. #49 at 17. Defendant again seeks summary judgment, arguing that it did not subject plaintiff to adverse employment action.

Again, plaintiff cites no reason why the carman position in Topeka was objectively more desirable than her painter position in Havelock. In fact, plaintiff concedes that she was more qualified as a painter than as a carman and "wouldn't have been confident . . . that I could handle it totally without being disqualified." See Wheeler Deposition (Doc. #50-1) at 415. The Court therefore holds that as a matter of law, BNSF's refusal to transfer plaintiff to Topeka as a carman in April of 2007 did not constitute an adverse employment action. Defendants are entitled to summary judgment on this claim.

D.     Failure To Transfer Plaintiff To Topeka After June of 2007

Plaintiff alleges that BNSF treated her less favorably than unnamed co-employees when it offered them transfers to Topeka as painters while she was employed at Havelock as a painter and seeking transfer to Topeka. Specifically, plaintiff alleges that Galvan made a decision to transfer her to Topeka in June of 2007 but did not actually transfer her until August of 2008. See Doc. #49 at 17. Defendants seek summary judgment because BNSF did not subject plaintiff to adverse employment action.

Plaintiff cites no evidence why Topeka was a more objectively desirable work position than Havelock. The Court therefore holds that as a matter of law, BNSF's refusal to transfer plaintiff to Topeka in June of 2007 did not constitute adverse employment action and defendants are entitled to summary judgment on this claim.

E.     Disparate Treatment – Relative To Barnes

Plaintiff claims that BNSF discriminated on the basis of race and gender by treating her less favorably than Barnes after they returned to Topeka.  Specifically, defendants did not give her keys to the Topeka facility or to her personal locker, and did not assign a vehicle for her use.  In addition, supervisors relayed her work assignments via Barnes and gave her work assignments with unusually short time requirements.  Defendants argue that these actions do not constitute adverse employment actions and that no one at BNSF has disciplined plaintiff or counseled her with respect to any work performance since she returned to Topeka.

Generally speaking, revoking an employee's use of building keys or delaying an employee's access to building keys is not a materially adverse change in the terms and conditions of employment which could support a charge of retaliation.  See, e.g., Case v. Okla. Cty. Indep. Sch. Dist. No. 89 of Okla. County, No. 07-0233, 2008 WL 2778107, at *6 (W.D. Okla. July 14, 2008) (taking plaintiff's building keys not materially adverse action); Hill v. Rayboy-Brauestein, 467 F. Supp.2d 336, 354 (S.D.N.Y. 2006) (delay in replacing lost key not materially adverse where employee not prevented from working).  Here, plaintiff does not allege how defendants' failure to provide keys was a materially adverse employment action.

An employer's failure to provide an employee with a vehicle is not an adverse employment decision where lack of vehicle access is an inconvenience that does not effect the employee's ability to perform her job.  See Roney v. Ill. Dept. of Transp., 474 F.3d 455, 461 (7th Cir. 2007).  Here, plaintiff merely alleges that she was not assigned a vehicle to use at work.  She does not specify her need for said vehicle or why defendants' failure to provide her a vehicle could be construed as an adverse employment action.

Pressure to perform an essential function of one's job is not adverse employment action. Anderson v. Arizona, No. 06-00817-PHX, 2007 WL 1461623, at *7 (D. Ariz. May 16, 2007). Furthermore, telling one employee to take occasional orders from another employee is not adverse employment action, especially absent evidence that the employer disciplined plaintiff for failing to comply with the orders. Brown v. West, No. 93-75367, 1995 WL 871141, at *9 (E. D. Mich. Feb. 08, 1995). Plaintiff has not alleged that defendant disciplined her for any reason since she returned to Topeka. Nor has plaintiff explained why increased time pressure to perform her job constitutes adverse employment action. Defendants are therefore entitled to summary judgment on plaintiff's disparate treatment claims relating to Barnes.

## II.  Retaliation (Count III)

Title VII forbids employers from discriminating against an employee for opposing an employment practice made unlawful by Title VII. Pinkerton v. Colo. Dept. of Transp., 563 F.3d 1052, 1054 (10th Cir. 2009) (citing 42 U.S.C. § 20003-3(a)). Plaintiff claims that because she protested race and sex discrimination, BNSF retaliated by (1) failing to transfer her back to Topeka after June of 2007 and (2) treating her less favorably than Barnes after they returned to Topeka in 2008. Defendant seeks summary judgment, arguing that plaintiff has not alleged adverse employment action.

To establish a prima facie case of retaliation, plaintiff must show that (1) she engaged in protected opposition to discrimination, (2) she suffered materially adverse action contemporaneous with or subsequent to such activity; and (3) a causal connection existed between the protected activity and the materially adverse action. See Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1202 (10th Cir. 2006); Knight v. City of Prairie Village, Kan., 06-2299-KHV, 2008 WL

474257, at *8 (D. Kan. Feb. 19, 2008). For purposes of a retaliation claim, a materially adverse action need not affect the employee's terms and conditions of employment; rather, plaintiff must show that the challenged action could dissuade a reasonable employee from making or supporting a charge of discrimination. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006).

Plaintiff correctly asserts that although her retaliation claim implicates the same allegedly adverse actions which form the basis of her disparate treatment claim, a different and less strict standard applies for determining whether these employment actions are "adverse." Under this less strict standard, plaintiff must show that a reasonable employee would have found the challenged action materially adverse, i.e., that it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Burlington, 584 U.S. at 68; see also Somoza v. Univ. of Denver, 513 F.3d 1206, 1212-13 (10th Cir. 2008).

A.     Failure to Transfer

Plaintiff claims that BNSF failed to transfer her back to Topeka after June 2007 in retaliation for protests of race and gender discrimination.[15] Defendants argue that, as a matter of law, plaintiff has not shown that its failure to transfer constitutes adverse employment action.

To constitute materially adverse employment action to establish a prima facie claim for retaliation, the Court requires objective evidence of material disadvantage; the bald personal preference of plaintiff is insufficient. Semsroth, 555 F.3d at 1184-85 (citing McGowan v. City of Eufala, 472 F.3d 736, 742-43 (10th Cir. 2006)). In McGowan, a retaliation case, this Court held that failure to reassign an employee to a day shift failed the test of materiality and thus did not constitute

---

[15]     Plaintiff does not cite BNSF's refusal to transfer her to Topeka in 2005 and 2006 because her first instance of protected conduct occurred in 2007.

adverse action when the employee identified no specific rationale for the transfer request except an undefined subjective preference for change, the shifts offered no differences in pay and benefits, and the night shift was not more arduous. 472 F.3d at 743. In Semsroth, another retaliation case, this Court held that failure to transfer was not adverse employment action when plaintiff had not cited evidence of any objective advantage to the position which she preferred. 555 F.3d at 1185-86.

Plaintiff cites no objective difference between her painter position in Havelock and the painter position to which she requested transfer to in Topeka in 2007. Because the record contains no objective evidence of material disadvantage to plaintiff, the Court holds that as a matter of law, BNSF's refusal to transfer plaintiff back to Topeka after June of 2007 did not constitute an adverse employment action for purposes of her retaliation claim. Defendants are entitled to summary judgment on this claim.

B.    Disparate Treatment – Relative to Barnes

Plaintiff claims that BNSF retaliated by treating her less favorably than Barnes after they returned to Topeka on August 24, 2008. Plaintiff relies on the same adverse employment actions alleged in her discrimination claim. See supra at 17. Defendants argue that these actions do not constitute adverse employment actions and that no one at BNSF has disciplined plaintiff or counseled her with respect to any work performance matter since she returned to Topeka.

For the reasons set forth above, the Court finds that none of plaintiff's allegations relative to Barnes constitute adverse employment action. Defendants are therefore entitled to summary judgment on these claims.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #42) filed February 17, 2010 be and hereby is **SUSTAINED**.

Dated this 4th day of June, 2010 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge